OPINION
{¶ 1} Marrico Murray pleaded no contest and was found guilty of fourth degree felony possession of cocaine. He was sentenced to fifteen months incarceration. On appeal, he asserts as error the overruling of his motion to suppress. His two assignments of error are as follows:
 {¶ 2} "1. The trial court erred to defendant's prejudice by overruling his motion to suppress evidence obtained in the traffic stop of his vehicle, because the warrantless search of appellant violated appellant's rights guaranteed by the fourth
and fourteenth amendments to the united states constitution and article i, sections 14 AND 16 of the ohio constitution in that the officers in question lacked reasonable suspicion to stop the vehicle.
 {¶ 3} "2. The trial court erred to defendant's prejudice by overruling defendant's motion to suppress evidence obtained by labeling the stop as a valid investigatory stop under Terry v.Ohio in violation of the fourth amendment to the united states constitution and section 14, article 1 of the ohio constitution."
 I. {¶ 4} Dayton Police Officers Jason Barnes and Douglas George testified at the suppression hearing, as did Murray. To the extent that Murray's testimony differed from that of the officers, the trial court appears to have credited the latters' testimony.
 {¶ 5} Barnes testified that he had two years experience as a police officer, and that he was partnered with George in a marked cruiser in the early morning hours of September 3, 2003.
 {¶ 6} Around 4:00 a.m., the officers were westbound in the 2200 block of West Second Street, which Barnes stated was a high crime and drug area where he had personally made 6-12 drug arrests. From fifty feet away, the officers observed a vehicle parked eastbound in front of a vacant house at 2230 West Second.
 {¶ 7} A man on a bike was "leaning into the driver's side of the vehicle. Almost half of his body was leaning into the driver's side of the vehicle." Two women appeared to be conversing with the passenger in the vehicle.
 {¶ 8} When they observed the cruiser, the man on the bike left the vehicle, going eastbound on West Second, and the women also left, going westbound. Barnes testified that bicycles are frequently used in drug deals because bicycles can be ridden where police cruisers cannot follow. Barnes himself had not been involved in any drug arrests involving bicycles.
 {¶ 9} Barnes thought he had observed a drug deal, although he observed no "passing motions" between the driver and the man on the bike. Barnes stopped his cruiser "in the middle of West Second Street" in close proximity to the parked vehicle.
 {¶ 10} Barnes approached the driver side of the vehicle while George approached the passenger side. In response to Barnes' question, the driver, who was Murray, said he didn't live at 2230. Barnes stated that guns and drugs "go hand in hand" although none of his drug arrests "in that area" involved weapons. He said that he was concerned that Murray might be armed, and, because he couldn't see Murray's left hand, he asked Murray to put his hands on the steering wheel, which Murray refused to do.
 {¶ 11} Because of Murray's refusal to display his hands, Barnes asked him to exit the vehicle. Murray exited the vehicle with a clenched left fist which Barnes asked him to open. Murray opened his hand and flipped a clear baggy containing a chalky substance onto the roof of the vehicle.
 {¶ 12} Barnes believed the substance to be crack cocaine and handcuffed Murray after a brief struggle. Barnes observed no furtive movements by Murray and didn't pat him down before handcuffing him.
 {¶ 13} George's testimony was consistent with Barnes'. He testified he had two and a half years' police experience. He said there were two drug houses in the 2200 block of West Second, and that he'd made approximately ten drug arrests in that block in two years, none of which involved weapons or bicycles. George also thought he had observed a drug sale, although he observed no exchange-like movements between Murray and the man on the bike.
 {¶ 14} He approached the parked vehicle on the passenger side and, with his flashlight, observed a bag of suspected crack cocaine in Murray's left hand when Barnes told Murray to display his hands. George decided to arrest Murray for drug possession and went around the vehicle to do so, at which time he saw Murray toss the bag onto the roof of the vehicle. George intentionally did not inform Barnes of his intent to arrest Murray because he didn't want to alert Murray of his intentions and jeopardize the officers' safety.
 {¶ 15} George testified that, before observing the baggy of crack cocaine in Murray's left hand, he thought, from the placement of Murray's left hand, that he might have a weapon. He said he had experienced the combination of drugs and weapons "many, many" times (although not in the 2200 block of West Second, supra). Like Barnes, George saw no furtive movements by Murray.
 II. {¶ 16} The parties appear to agree that this police-citizen encounter was an investigative detention so that the threshold issue is whether the officers articulated a reasonable suspicion that Murray was involved in a drug transaction. See Terry v.Ohio (1968) 392 U.S. 1.
 {¶ 17} Murray argues that a reasonable, articulable suspicion of drug activity was lacking because the officers observed nothing more than conversation and, themselves, had no experience with bicycle/motor vehicle drug deals.
 {¶ 18} We believe the totality of the circumstances demonstrate more. See State v. Bobo (1988), 37 Ohio St.3d 177. The officers, as the trial court observed from the bench, were entitled to rely on "department experience as well as their own experience" in evaluating what they observed. Although the officers apparently had no personal experience with bicycle/motor vehicle drug deals, it is hardly a stretch to infer that their knowledge that bicycles are used in the drug trade was acquired in the course of their training and work as police officers. The officers appear to have had personal knowledge that the 2200 block of West Second was a high crime and drug area, having stated there were two drug houses in the block and having personally made drug arrests on that block. Although they observed no passing or exchange movements, it was 4:00 a.m. when they observed the parked vehicle and man on the bike, who was halfway into the vehicle on the driver side. Thus, the failure to observe such movements detracts little from the reasonableness of the officers' suspicions. Finally, the man on the bike and the two women departed upon observing the arrival of the police. In our judgment, the trial court reasonably concluded that the officers had a reasonable, articulable suspicion that they had observed an unlawful drug deal. Thus, the investigative detention was lawful.
 {¶ 19} Murray does not question the propriety of Barnes asking him to exit the vehicle, but appears to argue that the failure to pat him down before handcuffing him reveals a lack of intention on Barnes' part to conduct a patdown, and — presumably — an intention to arrest him on less than probable cause.
 {¶ 20} This argument ignores the facts. Murray exited the vehicle with his left fist clenched and, when Barnes asked him to open his fist, Murray immediately flipped a baggy of suspected crack cocaine onto the roof of the vehicle. This furnished Barnes with probable cause to immediately arrest Murray for possession of crack cocaine and to seize the suspected crack cocaine.
 {¶ 21} Finally, Murray argues that because George didn't communicate his observations of the baggy of suspected crack cocaine in Murray's left hand to Barnes, Barnes arrested him without probable cause. We reject this argument because Barnes had probable cause based on his own observations, as just discussed.
 {¶ 22} Furthermore, George, based on his observation of suspected crack cocaine in Murray's left hand, also possessed probable cause — independent of Barnes to arrest Murray for possession of crack cocaine and to seize the suspected crack cocaine.
 III. {¶ 23} The assignments are overruled.
 {¶ 24} The judgment will be affirmed.
Brogan, J. and Young, J., concur.