OPINION
{¶ 1} This is an appeal by the State from a judgment of the court of common pleas that suppressed evidence of drugs police found in a search of Defendant-Appellee Douglas Oglesby's vehicle, as well as Oglesby's statements about those drugs. The facts are set forth in the trial court's decision granting Defendant's motion to suppress:
 "FINDINGS OF FACT {¶ 2} "The Court finds by preponderance of the evidence that on or about November 25, 2005, Officer Raymond Dine, a veteran of seven years on the Dayton Police Department, was on road patrol in the area of West Third Street and Antioch in the City of Dayton, Montgomery County, Ohio. Working the 3:00 p.m. to 11:00 p.m. shift with his partner, Officer Patrick Bucci, Dine was proceeding south on Antioch at about 4:00 p.m. when he and his partner approached Third Street in their cruiser to monitor activities at two pay telephones outside the Currency Exchange at 1616 West Third Street in Dayton. This was known to the officers to be a location of high drug activity. Officer Dine had himself initiated twenty to thirty drug contacts at that location. Arriving at the stop sign on Third Street, Officer Dine noticed a white male talking to the African American driver of a green automobile. As soon as the two subjects noticed the police cruiser, they immediately dispersed, with the Defendant getting into the green automobile and parking it, getting out and going into the Currency Exchange. The officer proceeded through the intersection to Mercer Street, at which point Officer Dine got out of his cruiser in order to observe the location in front of the Currency Exchange without being seen. Within a few minutes, Defendant emerged from the Currency Exchange, got back into his automobile, at which point the previously identified white subject approached the vehicle, reached in as though an exchange was being made, and then walked away from the vehicle. At this point, the Defendant operated his green vehicle away from the scene and a stop was made on Mercer.
 {¶ 3} "Once the stop was made, the officers emerged from their vehicle with firearms drawn, and ordered the Defendant to show his hands. The Defendant initially raised his left hand but kept his right hand below the steering wheel. When asked again, he complied with both hands. While this occurred, the officers noticed a baggy of capsules on the side of the driver's seat.
 {¶ 4} "Officer Dine testified that the stop was made due to a suspected drug transaction only, and not due to any traffic violation. The officers immediately arrested Defendant who stated while being arrested that he picked up the baggy off the ground. At no time were Miranda rights administered to Defendant."
 {¶ 5} Defendant was indicted on two fifth degree felonies: one count of possession of heroin, less than one gram, in violation of R.C. 2925.11(A), and one count of possession of cocaine (not crack), less than five grams, in violation of R.C.2925.11(A). Defendant filed a motion to suppress the evidence, including all evidence obtained by police as a result of the stop of Defendant's vehicle. Following a hearing held on May 10, 2006, at which only Officer Raymond Dine testified, the trial court granted Defendant's motion to suppress on June 5, 2006. The court concluded that police lacked a reasonable, articulable suspicion of drug activity sufficient to support an investigatory stop of Defendant's vehicle under Terry v. Ohio (1968), 392 U.S. 1,88 S.Ct. 1868, 20 L.Ed.2d 889, in part because police did not observe furtive movements, anything exchanged between the two men, any drugs or paraphernalia, nor did police have any sensory perception, such as smelling the odor of a burning drug or hearing a conversation about drugs. Furthermore, the officers did not recognize either of the two subjects as having previously been arrested for a drug offense."
 {¶ 6} The State timely appealed to this court pursuant to R.C. 2945.67(A) and Crim.R. 12(K) from the trial court's decision granting Defendant's motion to suppress the evidence.
 ASSIGNMENT OF ERROR {¶ 7} "THE OFFICERS HAD A REASONABLE AND ARTICULABLE SUSPICION OF DRUG ACTIVITY TO JUSTIFY STOPPING OGLESBY. THE TRIAL COURT ERRED WHEN IT FOUND THE STOP TO BE UNLAWFUL AND SUPPRESSED THE EVIDENCE AND STATEMENTS."
 {¶ 8} In reviewing a trial court's decision on a motion to suppress, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. Accepting those facts as true, the court of appeals then independently determines, as a matter of law and without deference to the trial court's conclusions, whether those facts satisfy the applicable legal standard. State v.Satterwhite (1997), 123 Ohio App.3d 322.
 {¶ 9} In State v. Heard (Feb. 28, 2003), Montgomery App. No. 19322, 2003-Ohio-906, this court observed:
 {¶ 10} "In order to conduct an investigatory stop, police must be able to point to specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the intrusion. Terry v. Ohio (1968),392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889; State v. White
(January 18, 2002), Montgomery App. No. 18731. The propriety of an investigative stop must be viewed in light of the totality of the surrounding facts and circumstances. State v. Bobo (1988),37 Ohio St.3d 177, 524 N.E.2d 489. These circumstances must be viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold.State v. Andrews (1991), 57 Ohio St.3d 86, 565 N.E.2d 1271. Accordingly, the court must take into consideration the officer's training and experience and understand how the situation would be viewed by the officer on the street. Id." Id. at ¶ 14.
 {¶ 11} The evidence demonstrates that Officer Dine had made over one hundred drug arrests and that he is familiar with areas where drug activity is prevalent. (T.4). He testified that the pay phones in the parking lot of the Currency Exchange at 1616 West Third Street, Dayton, is a location of frequent drug activity, (T.6) because people use those phones to contact drug dealers to make arrangements to purchase drugs. (T. 6). Officer Dine said he had made twenty or thirty contacts with citizens for drug activity at that specific location (T. 6), and he testified that the activity he saw involving Defendant and the other man was consistent with a drug transaction. (T. 9).
 {¶ 12} Defendant argues that Officer Dine observed nothing more than Defendant seated in his vehicle and conversing with another man in a location which happens to be an area known for frequent drug activity. We believe the totality of the facts and circumstances demonstrate much more than that.
 {¶ 13} When Officer Dine observed a man talking to Defendant while he was seated in his vehicle near those pay phones, Dine suspected that they were engaged in drug activity based upon his experience; what he had observed in the area, the contacts he has had with people there, and that they were at the pay phones as opposed to being in the business or walking into the business. That suspicion was heightened when the two men abruptly ended their conversation and immediately parted company upon seeing Officer Dine approach in his police cruiser. Each man went in a different direction. The two men's reactions to police is a relevant factor to consider in evaluating whether the totality of the circumstances demonstrate a reasonable suspicion of criminal (drug) activity. State v. Murray (November 19, 2004), Montgomery App. No. 20301, 2004-Ohio-6229, at ¶ 18.
 {¶ 14} Officer Dine did not conduct an investigatory stop at that point, and instead drove to a location where he could watch the two men without being seen by them. Defendant did not remain inside Currency Exchange for long, and Officer Dine watched as he returned to his vehicle and backed it up to where it had been parked. The other man then walked over to Defendant's vehicle and reached his hand inside the driver's window. After this brief encounter, the other man left and returned to his own vehicle. In Officer Dine's experience, the conduct he witnessed was consistent with drug transactions he observed in the past. Officer Dine's familiarity with how drug transactions occur is a relevant factor in evaluating the totality of the circumstances to determine whether they justify an investigatory stop. Statev. Turner (January 16, 2004), Montgomery App. No. 19738,2004-Ohio-159, at ¶ 19-21.
 {¶ 15} We conclude that, based upon his experience, Officer Dine recognized a course of events that reasonably could constitute a drug transaction. While certain events when viewed separately can be innocent, taken together the same events may warrant further investigation. State v. Carter (June 2, 2006), Montgomery App. No. 21145, 2006-Ohio-2823. It is the very essence of Terry to permit officers to briefly detain an individual for investigation to resolve ambiguities in their conduct which also suggest criminal activity. Id. The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information may be most reasonable in light of the facts available to the officer at the time. State v. Freeman (1980),64 Ohio St.2d 291, 295-296.
 {¶ 16} When the totality of the facts and circumstances in this case are viewed through the eyes of Officer Dine, and understood as Dine viewed them in relation to his training, knowledge and experience, they present reasonable suspicion of drug activity sufficient to justify the minimal intrusion that a brief Terry investigatory stop involves. Defendant's Fourth Amendment rights were not violated by the Terry investigative stop in this case, and the trial court therefore erred in finding otherwise and suppressing the evidence police obtained as a result of this stop.
 {¶ 17} The State's assignment of error is sustained. The judgment of the trial court granting Defendant's motion to suppress the evidence will be reversed and this cause remanded to the trial court for further proceedings.
Fain, J. and Walsh, J., concur.
(Hon. James E. Walsh, Twelfth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio)