JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Richard Greathouse ("defendant"), appeals from his conviction for one count of drug possession following his no contest plea. Defendant maintains that his conviction should be vacated on the following grounds: (1) his counsel's failure to file a motion to suppress evidence; and (2) because he believes that the trial court did not adequately advise him of his right to compulsory process in accordance with Crim. R. 11. For the reasons that follow, we affirm.
 {¶ 2} Defendant, with the assistance of counsel, entered a no contest plea to the charge of drug possession in violation of R.C. 2925.11. Before accepting the plea, the court addressed defendant and, among other things, advised him of various constitutional rights. During this process, the trial court advised him, "[y]ou must interrupt me should there be any one of your rights that we go over that you don't understand * * *." The court specifically asked the defendant, "And do you also understand that you're giving up your right to compulsory process? That means the right to use the subpoena power of the Court to summon witnesses who could testify on your behalf or for you." Defendant responded, "Yes." Following its plea colloquy with the defendant, the court accepted his no contest plea.
 {¶ 3} The court instructed the State to then place on the record what it would have proved had the matter gone to trial. The State offered the narrative in the police report, which provided: *Page 4 
 {¶ 4} "The incident date is March 29 of 2007; location 12615 Woodside. The reporting officer is McClendon,* * * On Thursday, March 29, 2007, while assigned to the Sixth District Vice Unit, in the company of Sergeant Purcell, * * * Pillow * * *; Murphy, we had the occasion to arrest Richard Greathouse and Cherri Herndon * * * for violation of State drug law.
 {¶ 5} "The facts concerning the arrest are as follows:
 {¶ 6} "`We were checking the area of 128th and Woodside, a high crime area, known for drug activity. We observed the auto stopped with its motor running.
 {¶ 7} "`As we drove by the vehicle, the occupants of the vehicle appeared to be looking down at something on the seat between them.
 {¶ 8} "`When they looked up and realized that we were police, they looked shocked.
 {¶ 9} "The male immediately leaned forward and appeared to be trying to conceal something on the floor. His actions heightened our suspicions of suspected drug activity.
 {¶ 10} "`At that point, we pulled in front of the stopped vehicle and exited our vehicle to further investigate.
 {¶ 11} "`As we started walking towards the vehicle, the female began leaning forward as if she was trying to conceal something.
 {¶ 12} "`We then approached the vehicle with caution, asked the driver, Richard Greathouse, and his passenger, Cherri Herndon, to exit the vehicle. *Page 5 
 {¶ 13} "`When they were asked why they were parked in this particular area, the male stated they were going to the store, which was approximately five houses away from where they were parked.
 {¶ 14} "`Both the male and the female were patted down for officer safety and protection.
 {¶ 15} "`When we looked inside the vehicle, in plain view of the front seat between the seats was a brand new Chore Boy.
 {¶ 16} "`When Sergeant Purcell checked the floor where the male was sitting and where we observed him leaning, there was a Beach Palm cigarette pack. Inside the cigarette pack was two rocks of suspected crack cocaine.
 {¶ 17} "`When the rocks were discovered, the male stated, "That's not my stuff. She had the stuff."
 {¶ 18} "The female then stated, "Richard, tell them the truth. You know that's not my stuff."
 {¶ 19} "`Both the male and female were arrested and advised of their rights.
 {¶ 20} "`I asked the male if we had checked the package for DNA, would we find DNA.
 {¶ 21} "The male stated, "Yes."
 {¶ 22} "The male further stated that he often bought cheap cigarettes to give out to people who asked for them, but it was the female who put the crack in the cigarette pack. *Page 6 
 {¶ 23} "The male was conveyed to CPU * * * in connection with the above facts.'"
 {¶ 24} The State further informed the court that the substance tested positive for the presence of cocaine at .27 grams.
 {¶ 25} Based on the recitation by the State, the court found the defendant guilty. The defendant now appeals, raising two assignments of error for our review.
 {¶ 26} "I. Defendant Richard Greathouse was denied effective assistance of counsel in violation of the Sixth andFourteenth Amendments to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution."
 {¶ 27} To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. Strickland v.Washington (1984), 466 U.S. 668.
 {¶ 28} "A failure to file a motion to suppress may constitute ineffective assistance of counsel where there is a solid possibility that the court would have suppressed the evidence. [Citation omitted.] However, even when some evidence in the record supports a motion to suppress, we presume that defense counsel was effective if defense counsel could reasonably have decided that the filing of a motion to suppress would have been a futile act. [Citation omitted.]" State v.Jackson, Cuyahoga App. No. 86542, 2006-Ohio-1938, ¶ 18.
 {¶ 29} Defendant maintains that the officers lacked reasonable suspicion to stop him. Defendant further argues that he was subject to an illegal search under *Page 7 
the Fourth Amendment because the officers not only stopped him but proceeded to search the vehicle and a cigarette container.
 {¶ 30} The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them, per se, unreasonable unless an exception applies. Katz v. United States (1967),389 U.S. 347. An investigative stop or Terry stop is a common exception to the Fourth Amendment warrant requirement. Terry v. Ohio (1968),392 U.S. 1. Under the Terry-stop exception, an officer properly stops an automobile if the officer possesses the requisite reasonable suspicion based on specific and articulable facts. Delaware v. Prouse (1979),440 U.S. 648, 653; State v. Gedeon (1992), 81 Ohio App.3d 617, 618;State v. Heinrichs (1988), 46 Ohio App.3d 63.
 {¶ 31} The Ohio Supreme Court in State v. Bobo (1988),37 Ohio St.3d 177, held:
 {¶ 32} "The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances.
 {¶ 33} "Where a police officer, during an investigative stop, has a reasonable suspicion that an individual is armed based on the totality of the circumstances, the officer may initiate a protective search for the safety of himself and others." Id., paragraph one and two of the syllabus, internal citations omitted.
 {¶ 34} In Bobo, the court assessed "what degree of conduct must a police officer observe to give rise to a `reasonable suspicion.'" InBobo, the court found significant the following facts: that Bobo was parked in an area noted for a number *Page 8 
of drug transactions; the time of the stop being late at night coupled with the experience and training of the officer; and the officers' observation of Bobo "popping up and then ducking down or leaning forward" under these circumstances. The Ohio Supreme Court found the "officers reasonably stopped Bobo for investigative purposes and acknowledged, "The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. * * * Terry recognizes that it may be the essence of good police work to adopt an intermediate response." Id. at 180.
 {¶ 35} The facts establish that several officers, including a police sergeant, observed defendant and were involved in the events leading up to defendant's arrest. The narrative reflects that the officers found defendant's conduct suspicious given the high-crime nature of the area and that defendant and his companion were acting nervous and shocked to see the police. A person's reaction to police is a relevant factor to consider in evaluating the totality of the circumstances surrounding an investigative stop. See State v. Oglesby, Montgomery App. No. 21648,2006-Ohio-6229, ¶ 13. The officers observed furtive movements and were given an implausible excuse by defendant for keeping his car idling in the street, despite being allegedly destined for a store only five houses away. The officers also observed a Chore Boy, which is commonly used as drug paraphernalia,[1] in plain view. *Page 9 
 {¶ 36} Furthermore, due to defendant's no contest plea, the record does not contain the actual testimony of the arresting officers and was factually limited to the narrative of their report. The Ohio Supreme Court directs us that "`[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" State v. Ketterer, 111 Ohio St.3d 70, 2006-Ohio-5283, ¶ 85, quoting Strickland, 466 U.S. at 689, and citing State v. Bird
(1980), 81 Ohio St.3d at 585 (judicial scrutiny of counsel's tactical decisions, including recommending to the client a no-contest plea, must be highly deferential). Therefore, we are mindful that counsel may have been aware of additional facts that were not contained in the report but would have been elicited through the officers' testimony had there been a formal hearing. This could have weighed into counsel's decision not to pursue a suppression motion and instead to recommend that defendant enter a no contest plea.
 {¶ 37} Based on the foregoing, we find that the elements necessary to sustain his claim of ineffective assistance of counsel are not satisfied under the applicable law by this record.
 {¶ 38} Assignment of Error I is overruled. *Page 10 
 {¶ 39} "II. The trial court erred when it did not advise Richard Greathouse he was waiving certain constitutionally guaranteed trial rights by pleading guilty in violation of the Fifth, Sixth, andFourteenth Amendments to the U.S. Constitution and Article I Section 10
of the Ohio Constitution and Ohio Crim. R. 11."
 {¶ 40} In regards to non-constitutional rights, we review a trial court's adherence to Crim. R. 11 for substantial compliance. State v.Scott, Cuyahoga App. Nos. 84382, 84383, 84384, 84389, 2005-Ohio-3690. Where the constitutional rights listed in Crim. R. 11 (C) are concerned, the review is heightened to a strict compliance analysis. State v.Nero (1990), 56 Ohio St.3d 106; State v. Higgs (1997),123 Ohio App.3d 400.
 {¶ 41} Crim. R. 11(C) provides, in relevant part, as follows:
 {¶ 42} "(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
 {¶ 43} "* * *
 {¶ 44} "(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the State to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself. *Page 11 
 {¶ 45} "[A] trial court need not specifically tell a defendant that he has the right to `compulsory process,' it must nonetheless `inform a defendant that it has the power to force, compel, subpoena, or otherwise cause a witness to appear and testify on the defendant's behalf. * * *'"State v. Cummings, Cuyahoga App. No. 83759, 2004-Ohio-4470, ¶ 6, quotingState v. Wilson, Cuyahoga App. No. 82770, 2004-Ohio-499, at ¶ 16, appeal not allowed, 102 Ohio St.3d 1484, 2004-Ohio-3069 (other citations omitted). However, merely informing a defendant, without specifically mentioning "compulsory process," that he or she has the right to bring in witnesses to testify in his or her defense is not a sufficient advisement of the right to compulsory process. Wilson, supra.
 {¶ 46} Defendant maintains that the trial court failed to adequately advise him of his right to compulsory process in violation of Crim. R. 11 and his constitutional rights. However, the trial court explained to defendant, "And you also understand that you're giving up your right tocompulsory process? That means the right to use the subpoena power of the Court to summon witnesses who could testify on your behalf for you." (Emphasis added.) Having previously been instructed by the court to interrupt if he did not understand any of his rights, defendant proceeded to respond, "yes," confirming his understanding of this right. Accordingly, there is nothing in the record to support defendant's claim that he did not fully understand the terms "compulsory process," "subpoena power," or "summon," which effectively informed him that he had access to the court's resources to compel the attendance *Page 12 
of witnesses to testify in court. The trial court strictly complied with Crim. R. 11 concerning the right to compulsory process.
 {¶ 47} Assignment of Error II is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
CHRISTINE T. McMONAGLE, J., and ANN DYKE, J., CONCUR
[1] "A Chore Boy is a cleaning product made of steel or copper wool and used forscouring. However, Chore Boys also `ha[ve] gained a rather large market as a make-shift part for homemade crack cocaine pipes' because they can double as `filtering device[s]' through which users can smoke crack." State v. Freeland, Summit App. No. 23906, 2008-Ohio-1225, ¶ 3, fn. 1, quoting Wikipedia, Chore Boy, at http://en.wikipedia.org/wiki/Chore_Boy; also, citing, State v.Semedo, 5th Dist. No. 2006CA00108, 2007-Ohio-1805, at ¶ 4, fn.1 (defining "Chore Boy" as "a metallic scouring pad that is torn into small pieces and used to block the end of a crack pipe in order to smoke crack cocaine"). *Page 1