[Cite as *State v. Partin*, 2023-Ohio-4056.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO                    :
                                 :
        Appellant                :    C.A. No. 29845
                                 :
v.                               :    Trial Court Case No. 2020 CR 03124
                                 :
JAMES T. PARTIN                  :    (Criminal Appeal from Common Pleas
                                 :    Court)
        Appellee                 :
                                 :

. . . . . . . . . . .

O P I N I O N

Rendered on November 9, 2023

. . . . . . . . . . .

MATHIAS H. HECK, JR., by SARAH H. CHANEY, Attorney for Appellant

ARVIN S. MILLER, Attorney for Appellee

. . . . . . . . . . . .

HUFFMAN, J.

{¶ 1} The State of Ohio appeals from the trial court's decision granting Defendant-Appellee James T. Partin's motion to suppress. The State contends that the trial court erred by finding that the police officer lacked reasonable articulable suspicion to justify the stop and seizure, which led to Partin's eventual arrest. For the reasons outlined below, we agree and reverse the judgment of the trial court; the matter will be remanded

for further proceedings.

## I.        Factual and Procedural Background

{¶ 2} In the late evening hours of August 8, 2020, Englewood Police Officer Andrew Bronsord was patrolling the area of the Motel 6 in Englewood, which was an area known to him as a high-crime and high-drug area; he observed what he believed, based on his 19 years of training and experience as a law enforcement officer, to be a hand-to-hand drug transaction between an individual later identified as Partin and another man. When the two men observed Bronsord's cruiser, they quickly separated.   After gathering further information, including from the clerk of the hotel who advised Bronsord that Partin was not a guest at the hotel, Bronsord interacted with Partin and later detained and arrested him and placed him in a cruiser.   After Partin was moved from Bronsord's cruiser to that of another officer, drugs were found in the area where Partin had been seated in the first cruiser.

{¶ 3} Partin was subsequently indicted for possession of drugs, and he filed a motion to suppress the evidence obtained as a result of his detention and arrest. Following an evidentiary hearing, the trial court found that Officer Bronsord had lacked reasonable and articulable suspicion to justify the stop of Partin and granted his motion to suppress.   The State appeals from the trial court's decision.

## II.        Assignment of Error

{¶ 4} The State's sole assignment of error states:

Officer Bronsord had reasonable articulable suspicion of criminal activity sufficient to justify Partin's investigatory detention.   The trial court

erred, therefore, in sustaining Partin's motion to suppress.

{¶ 5} The State contends that the trial court improperly found that the police officer did not have reasonable articulable suspicion that criminal activity was occurring for the purpose of an investigatory detention of Partin. According to the State, the motion to suppress should have been overruled by the trial court, and the trial court's judgment must be reversed. We agree.

{¶ 6} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, "the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.,* citing *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.,* citing *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.,* citing *State v. McNamara,* 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist.1997).

{¶ 7} "The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution guarantee 'the right of people to be secure in their persons, houses, papers, and effects, against *unreasonable searches and seizures.'* " (Emphasis sic.) *State v. Taylor*, 106 Ohio App.3d 741, 747, 667 N.E.2d 60 (2d Dist.1995). "The United States Supreme Court has created three categories of police-

citizen contact to identify the situations where these guarantees are implicated." *Id.,* citing *Florida v. Royer,* 460 U.S. 491, 501-507, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1982). These categories are: consensual encounters; *Terry* stops or investigative detentions; and seizures equivalent to arrests. *Id.* at 747-749. The first two categories of police encounters are implicated here.

{¶ 8} "Consensual encounters are not seizures, and Fourth Amendment guarantees are not implicated in such encounters." *State v. Keister,* 2d Dist. Montgomery No. 29081, 2022-Ohio-856, ¶ 27, citing *Taylor* at 747-749, citing *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). "Consensual encounters occur when the police merely approach a person in a public place and engage the person in conversation, and the person remains free not to answer and to walk away." *State v. Lewis*, 2d Dist. Montgomery No. 22726, 2009-Ohio-158, ¶ 21, citing *Mendenhall* at 553. Therefore, "[a] consensual encounter can occur when a police officer approaches and questions individuals in or near a parked car." (Citations omitted.) *State v. Schott,* 2d Dist. Darke No. 1415, 1997 WL 254141, *3 (May 16, 1997); *see also State v. Jones,* 188 Ohio App.3d 628, 2010-Ohio-2854, 936 N.E.2d 529, ¶ 20 (10th Dist.). Moreover, "[t]he request to check a person's identification does not make the encounter nonconsensual; nor does the request to check one's belongings." (Citation omitted.) *State v. Crum,* 2d Dist. Montgomery No. 22812, 2009-Ohio-3012, ¶ 14. "The Fourth Amendment guarantees are not implicated in such an encounter unless the police officer has by either physical force or show of authority restrained the person's liberty so that a reasonable person would not feel free to decline the officer's

requests or otherwise to terminate the encounter." *Taylor* at 747-748. "Only once a person's liberty has been restrained has the encounter lost its consensual nature and [it] falls into a separate category beyond the scope of a consensual encounter." (Citations omitted.) *Crum* at ¶ 14.

{¶ 9} "Under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), a police officer who lacks probable cause to arrest may, consistent with the Fourth Amendment, make an investigatory stop, including a traffic stop, of a person if the officer has reasonable suspicion to believe that the person is or is about to be engaged in criminal activity." *State v. Tidwell,* 165 Ohio St.3d 57, 2021-Ohio-2072, 175 N.E.3d 527 ¶ 19, citing *Navarette v. California,* 572 U.S. 393, 396, 134 S.Ct. 1683, 188 L.Ed.2d 680 (2014). "Unlike consensual encounters, an investigatory detention constitutes a seizure; therefore, Fourth Amendment protections are implicated in an investigatory detention." (Citations omitted.) *State v. Shern,* 2d Dist. Montgomery No. 27976, 2018-Ohio-5000, ¶ 13. "An individual is subject to an investigatory detention when, in view of all the circumstances surrounding the incident, by means of physical force or show of authority, a reasonable person would have believed that he was not free to leave or is compelled to respond to questions." *Lewis* at ¶ 22, citing *Mendenhall* at 553 and *Terry* at 16, 19. In *Mendenhall*, the Supreme Court listed several factors that might indicate a seizure, including the display of a weapon by an officer, physical touching of the person, the use of language or tone of voice indicating that compliance with the officer's request might be compelled, and blocking the citizen's path, among others. *Mendenhall* at 54. "The mere presence of multiple officers does not necessarily establish a seizure." *State v.*

*Thomas,* 2d Dist. Montgomery No. 27588, 2017-Ohio-8606, ¶ 12.

{¶ 10} Investigatory detentions do not violate the Fourth Amendment "as long as the police have a reasonable, articulable suspicion of criminal activity." *State v. Ramey,* 2d Dist. Montgomery No. 26705, 2016-Ohio-607, ¶ 22, citing *Taylor* at 748-749, citing *Terry* at 21. "The determination whether an officer had reasonable suspicion to conduct a *Terry* stop must be based on the totality of circumstances 'viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.' " *State v. Hairston,* 156 Ohio St.3d 363, 2019-Ohio-1622, 126 N.E.3d 1132, ¶ 10, quoting *State v. Andrews,* 57 Ohio St.3d 86, 565 N.E.2d 1271 (1991). "An assessment of the totality of the circumstances 'does not deal with hard certainties, but with probabilities.' " *Id.,* quoting *United States v. Cortez,* 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). When reviewing an officer's actions, the court "must give due weight to his experience and training and view the evidence as it would be understood by those in law enforcement." *Andrews* at 88, citing *Cortez.*

{¶ 11} "Reasonable suspicion entails some minimal level of objective justification for making a stop – that is, something more than an inchoate and unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause." *State v. Jones,* 70 Ohio App.3d 554, 556-557, 591 N.E.2d 810 (2d Dist.). "Reasonable suspicion for a *Terry* stop 'is dependent upon both the content of information possessed by police and its degree of reliability.' " *Id.* at ¶ 20, quoting *Alabama v. White,* 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). " 'Both factors – quantity and quality – are considered in the "totality of the circumstances – the whole picture," * * * that must

be taken into account when evaluating whether there is reasonable suspicion.' " *Id.,* quoting *White* at 330, quoting *Cortez* at 417. "The 'reasonable and articulable suspicion' analysis is based on the *collection* of factors, not on the individual factors themselves." (Emphasis sic.) *State v. Batchili,* 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, ¶ 19, citing *United States v. Arvizu*, 534 U.S. 266, 274, 122 S.Ct.744, 151 L.Ed.2d 740 (2002). The "Supreme Court has held that, while a series of events appear innocent when viewed separately, taken together, they can warrant further investigation." *State v. White,* 2d Dist. Montgomery No. 18731, 2002 WL 63294, *2 (Jan. 18, 2002), citing *United States v. Sokolow,* 490 U.S. 1, 9-10, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989).

{¶ 12} "An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime." *Illinois v. Wardlow,* 528 U.S. 119, 124-25, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), citing *Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). However, "officers are not required to ignore the relevant characteristic of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation," and, thus, a stop occurring in a high crime area is a relevant contextual consideration in a *Terry* analysis. *Id.,* citing *United States v. Brignoni-Ponce,* 422 U.S. 873, 885, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *Florida v. Rodriguez,* 469 U.S. 1, 6, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984); *Sokolow* at 8-9.

{¶ 13} Nervous and evasive behavior also constitute pertinent factors in determining the existence of reasonable suspicion. *State v. Henderson,* 2d Dist. Montgomery No. 25184, 2013-Ohio-1369, ¶ 11. The reaction to police presence is a

relevant factor to consider in evaluating whether the totality of the circumstances demonstrate a reasonable suspicion of criminal activity. *State v. Murray*, 2d Dist. Montgomery No. 20301, 2004-Ohio-6229, ¶ 18. This court has found that the reactions of two individuals who abruptly end their conversation, immediately part company upon seeing an officer approach in his cruiser, and walk in different directions represents a relevant factor in evaluating whether the totality of the circumstances support the officer's reasonable suspicion of criminal activity sufficient to support the stop of one of the individuals. *State v. Oglesby,* 2d Dist. Montgomery No. 21648, 2006-Ohio-6229, ¶ 13.

{¶ 14} The State argues that Officer Bronsord had reasonable and articulable suspicion for the purpose of a *Terry* stop when he initially approached Partin. According to the State, the record supports that the officer approached Partin during night-time hours and knew the area to be a high-crime area where drug, prostitution, and domestic disturbance arrests as well as warrant arrests had been made by him and other officers in the past. The officer also observed what he believed, based upon his training and experience as a police officer for 19 years, was a hand-to-hand drug transaction between Partin and another individual; Partin was standing near the second man with his hand extended and then withdrew his hand and put it in his pocket. Upon observing Officer Bronsord, the two men went in different directions, and Partin looked away from the officer with his head down; the officer then observed what he perceived to be Partin's evasive behavior of ascending to the second floor of the hotel, not entering into any room or engaging any individual, and "wandering" around the property. Prior to approaching Partin, Officer Bronsord also learned from the motel clerk that Partin was not a guest at

the property and that the clerk believed Partin was with individuals with whom he was "having trouble" around the back of the motel. Following an initial consensual encounter, Bronsord told Partin to "stay put, man" while he gathered additional information and obtained a request from the motel clerk to trespass Partin from the property. After Partin repeatedly refused to provide his identifying information for the officer, he was placed under arrest. Bronsord then learned that Partin had an outstanding warrant for his arrest. Illicit drugs were eventually found in Bronsord's cruiser in the floor area where Partin had been sitting.

{¶ 15} In response to the State's argument, Partin argues that he was detained of his liberty from the moment Officer Bronsord asked to speak with him, despite no show of force or commands from the officer. Partin also argues that Officer Bronsord possessed nothing more than a mere "hunch" relating to the nature of his activities, which was insufficient to form a basis for a *Terry* stop. We disagree. The encounter between the two was consensual until the time the officer asked Partin to "stay put, man," and the detention was based on reasonable and articulable suspicion, rather than a mere hunch.

{¶ 16} In sustaining the motion to suppress, the trial court found that on August 8, 2020, Officer Bronsord had more than ten years of experience as a police officer and had significant training, including as an evidence technician. It further found that Bronsord arrived at the Motel 6 at approximately 9:50 p.m. and was aware that the area was known for drug activity and as a high call-out area where he had previously made drug arrests. Officer Bronsord observed two males interacting near one of the buildings and, while it was dark outside, the area was lighted; upon seeing the cruiser, one of the men, later

identified as Partin, turned away and placed his hand in his right pocket. Although Officer Bronsord was not able to see anything in Partin's hand, he suspected that Partin had placed something in his pocket. The officer observed Partin proceed to the second floor of the building and walk in front of the rooms. A few moments later, after seeing Partin then in the area of the office, Officer Bronsord learned from the clerk that Partin was not a resident of the motel and that the clerk was having difficulties with people, which included Partin, behind one of the buildings. When Officer Bronsord approached Partin, he appeared nervous and refused to provide his name when asked. The trial court found that Partin had denied being on the second floor of the building, but he advised the officer that he was present with a friend, was confused about his room number, and wanted a room close to his overheated work truck which contained tools. Officer Bronsord did not respond to Partin's questions about what crime he was suspected of having committed. After advising Partin to "stay put," Bronsord was asked by the clerk to trespass Partin from the property. Partin continued to refuse to provide his name, despite being asked repeatedly by Bronsord for the information for the trespass notice. Partin was then arrested. A short time later, illicit drugs were found in the area where Partin had been seated in a cruiser.

{¶ 17} The trial court found that Officer Bronsord's instruction to Partin to "stay put" constituted a detention, requiring reasonable and articulable suspicion of criminal activity to support the officer's actions. Instead of focusing on the totality of the circumstances to determine whether the officer possessed reasonable and articulable suspicion sufficient to warrant Partin's detention, though, the trial court evaluated each

individual piece of information possessed by the officer as either "innocent" or "not illegal" and concluded that there was not reasonable articulable suspicion that Partin was engaging in criminal behavior at the time he was told to "stay put." Whether conduct is illegal or legal is not a part of the analysis in determining reasonable and articulable suspicion. A series of seemingly innocent and legal acts, taken together, can be sufficient to form reasonable and articulable suspicion that an individual is engaged in criminal activity. Additionally, the trial court strayed from evaluating the information known to Officer Bronsord by highlighting that there were no other witnesses to the observed behavior between Partin and the other male, that the officer did not attempt to confirm his observations with other guests or persons present on the property, and that the officer contacted his supervisor. The center of a court's inquiry must lie in what an officer knew, and not what he could have learned from further investigation. Still further, despite the trial court's findings, Officer Bronsord was unaware of Partin's claim that his truck had overheated and he wanted a room near his vehicle at the time he told Partin to stay put. While Partin so testified at the oral hearing before the trial court, that information was not within the totality of the circumstances known to the officer when he detained Partin. A review of the video from Officer Bronsord's body camera confirms that Partin did not advise the officer that his truck had overheated or that he wanted a room near his truck; instead, after denying he had been on the second floor of the building, when the officer told Partin that he had seen him on the upper floor, Partin claimed that he was on the second floor of the building because he thought his room number was 238 rather than 138 as he then claimed. The trial court also found that Officer Bronsord

contacted his supervisor because of his uncertainty about what he had observed, thereby implying that the officer lacked reasonable and articulable suspicion for the detention of Partin. But the analysis of the totality of the circumstances is not focused on Bronsord's subjective belief about the information in his possession, but instead that of a reasonable officer under the circumstances.

{¶ 18} Accepting the facts as true as found by the trial court, we must independently determine, without deference to the conclusion of the trial court, whether the facts satisfied the applicable legal standard for a *Terry* stop. While standing alone, an individual fact may be insufficient to create a reasonable and articulable suspicion of criminal wrongdoing, the totality of the circumstances in this instance supported Officer Bronsord's detention of Partin to investigate. We must view the facts through his eyes as a reasonable and cautious police officer on the scene who is guided by his own experience and training. Guided by his training and experience as a law enforcement officer for 19 years, Bronsord was familiar with the area around the motel. He saw Partin in a high-crime area in which drug activity had often occurred; based on his training and experience as well as his observations of Partin's activity, he believed he had witnessed Partin engage in a hand-to-hand drug transaction. Contrary to the trial court's evaluation, Officer Bronsord was not required to be certain that a hand-to-hand drug transaction had taken place in order to support his reasonable and articulable suspicion, based upon the totality of the circumstances, that Partin was engaged in criminal activity. Hand-to-hand drug transactions, by their very criminal nature, are surreptitious and not conducted in open view. When viewed in light of all of the information known to Officer

Bronsord, the circumstances justified the conclusion that reasonable and articulable suspicion was present to authorize the detention of Partin for further investigation.

**{¶ 19}** After review of the record, we conclude that, upon consideration of the totality of the circumstances, Officer Bronsord had a reasonable and articulable suspicion that Partin was involved in criminal activity to warrant an investigatory stop, and that Bronsord's suspicion was not based solely on a "hunch."

**{¶ 20}** Because we have found that Partin's detention was supported by a reasonable, articulable suspicion of criminal activity, we reject the trial court's conclusion that the illicit drugs found as a result of the detention and subsequent arrest were fruit of the poisonous tree.

### III.    Conclusion

**{¶ 21}** Having sustained the State's assignment of error, the judgment of the trial court is reversed, and the matter is remanded for further proceedings.

. . . . . . . . . . . .

TUCKER, J. and LEWIS, J., concur.