[Cite as *State v. Wilson*, 2023-Ohio-409.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| STATE OF OHIO, | **CASE NO. 2022-L-044** |
| Plaintiff-Appellee, | |
| - v - | Criminal Appeal from the Court of Common Pleas |
| MATTHEW L. WILSON, | |
| Defendant-Appellant. | Trial Court No. 2021 CR 001497 |

**O P I N I O N**

Decided: February 13, 2023
Judgment: Affirmed

*Charles E. Coulson*, Lake County Prosecutor, and *Jennifer A. McGee*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Jerri Mitchell-Tharp*, P.O. Box 1126, Fairport Harbor, OH 44077 (For Defendant-Appellant).

JOHN J. EKLUND, P.J.

{¶1} Appellant, Matthew Wilson, appeals the trial court's denying his motion to suppress. After a jury trial, the trial court found Appellant guilty on five counts: (1) aggravated possession of drugs, a felony of the second degree, in violation of R.C. 2925.11; (2) possessing drug abuse instruments, a misdemeanor of the first degree, in violation of R.C. 2925.12; (3) illegal use or possession of drug paraphernalia, a misdemeanor of the fourth degree, in violation of R.C. 2925.14(C)(1); (4) aggravated possession of drugs, a felony of the third degree, in violation of R.C. 2925.11; and (5)

possession of a fentanyl related compound, a felony of the second degree, in violation of R.C. 2925.11. For the following reasons, we affirm the judgment of the Lake County Court of Common Pleas.

{¶2} On November 11, 2021, narcotic detectives Matthew Jacob and Ryan Butler were stationed in an unmarked vehicle next to a gas pump at a BP gas station while surveying the area for drug activity. Detective Butler described this gas station as a high crime area for drug activity. He observed a blue Hyundai Santa Fe with mismatching Ohio license plates enter the gas station parking lot and park next to a dumpster. The blue vehicle remained there for twenty minutes without anyone entering or leaving the vehicle. After twenty minutes, Detective Butler saw a gold Hyundai Santa Fe enter the parking lot and park next to the blue vehicle. The detectives ran both vehicles' back license plates through the local police dispatch. The gold vehicle's license plate returned "unidentifiable." Detective Butler explained that: "I ran that license plate through our Central Dispatch and they told me that the license plate that I gave returned not in file. So that typically means that it's not registered in the State of Ohio." (T.p. 22). The blue vehicle's license plate belonged to a female, even though only a male was in the vehicle. The detectives later identified Appellant as the driver of the gold vehicle. The detectives next saw Appellant exit the driver's side of the gold vehicle and enter the passenger's side of the blue vehicle. The blue vehicle then exited the parking lot and the detectives followed it. Detective Butler explained that he followed the vehicle "due to the high crime area, the driver of the blue Santa Fe sitting in a parking spot for twenty minutes and not exiting the car or visiting the business, the gold Santa Fe that had two separate license

2

plates on it, the fact that the driver of the gold Santa Fe immediately got into the passenger seat of the blue Santa Fe, and the fact they left together." (T.p. 23).

{¶3} Detective Butler stated that once on the road, the vehicle "almost caused an accident to the point where another car honked their horn at them. They then -- they got into the middle lane. * * * They were in the middle lane and they changed from the middle lane to the right lane without signaling." (T.p. 24). The vehicle drove to the parking lot of a business complex. The detectives did not follow the vehicle into the entrance, but parked outside the entrance, waiting for the vehicle to exit. Three minutes later, the vehicle exited and returned to the BP gas station. As the detectives followed the vehicle back to the gas station, Detective Butler "requested that a marked patrol car, one or two marked patrol cars would respond to the area while we were following it to essentially pull the vehicle over." He relayed to the responding patrolman that "I explained our observations at the gas station. I explained that we followed a vehicle to a business on Tyler Boulevard. I explained our -- the traffic violations that we witnessed and I also explained that we were following the vehicle and they were traveling back to the -- they were heading in the direction of the BP." (T.p. 54).

{¶4} Patrolman Austin Friel arrived, turned on his lights, and pulled the blue vehicle over as it returned to the gas station parking lot. Detective Butler spoke to the driver asked him for consent to search the blue vehicle; he agreed. Patrolman Friel testified that Appellant was nervous, unable to give his name at first, and repeatedly moved his arms reaching down between his legs. Patrolman Friel asked Appellant to keep his hands on the dashboard. Patrolman Friel removed Appellant from the vehicle, noticed tools in Appellant's pocket and conducted a pat-down for officer safety. A dog

3

sniff was conducted by a K9 and his handler. The officers found methamphetamine in the vehicle and hypodermic needles on Appellant's person.

{¶5} Appellant was arrested and indicted on five counts, as summarized above. Appellant pled not guilty and moved to suppress the evidence. At the suppression hearing, held on February 17, 2022, Appellant's counsel specified that he was only challenging the stop of the vehicle. Detective Butler testified to the events described above. The court denied Appellant's motion to suppress. The court held a jury trial and found Appellant guilty on all counts.

{¶6} Appellant timely appeals and raises two assignments of error.

{¶7} First assignment of error: "Defendant-Appellant's Constitutional rights to Due process and fair trial under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution were prejudiced by the ineffective assistance of trial counsel."

{¶8} Appellant contends that his trial counsel was ineffective because: (1) trial counsel failed to raise more issues in his motion to suppress; and (2) trial counsel failed to seek a continuance to prepare for the jury trial after being appointed.

{¶9} In reviewing an ineffective assistance of counsel claim, the standard we apply is "'whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *State v. Story*, 11th Dist. Ashtabula No. 2006-A-0085, 2007-Ohio-4959, ¶ 49, quoting *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). An appellant must demonstrate (1) his counsel was deficient in some aspect of his representation, and (2) there is a reasonable probability, were it not for counsel's errors,

4

the result of the proceedings would have been different. *Strickland* at 669. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A failure to "satisfy one prong of the Strickland test negates a court's need to consider the other." *State v. Madrigal*, 87 Ohio St.3d 378, 389, 2000-Ohio-448, 721 N.E.2d 52, citing Strickland at 697.

{¶10} An appellant "must be able to demonstrate that the attorney made errors so serious that he or she was not functioning as 'counsel' as guaranteed by the Sixth Amendment, and that he was prejudiced by the deficient performance." *Story, supra*, quoting *State v. Batich*, 11th Dist. Ashtabula No. 2006-A-0031, 2007-Ohio-2305, ¶ 42. Ohio courts presume that every properly licensed attorney is competent, and therefore a defendant bears the burden of proof. *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989). "Debatable trial tactics generally do not constitute a deprivation of effective counsel." *State v. Phillips*, 74 Ohio St.3d 72, 85, 656 N.E.2d 643 (1995). "Failure to do a futile act cannot be the basis for claims of ineffective assistance of counsel, nor could such a failure be prejudicial." *State v. Henderson*, 8th Dist. Cuyahoga No. 88185, 2007–Ohio–2372, at ¶ 42.

{¶11} Appellant first asserts that his trial counsel was ineffective because he failed to raise more issues in his motion to suppress. Specifically, Appellant contends that his trial counsel was ineffective by only challenging the detectives' reasonable suspicion to stop the vehicle, and that his trial counsel also should have challenged: (1) the prolonged

5

duration of the stop; (2) Appellant's removal and seizure from the vehicle; and (3) the K9's training.

{¶12} The failure to raise issues within a motion to suppress constitutes ineffective assistance of counsel only when the record demonstrates that the motion would have been successful if the issues had been raised. *State v. Howard*, 11th Dist. Lake No. 2019-L-153, 2020-Ohio-5057, ¶ 27.

{¶13} The record does not demonstrate that the motion would have been otherwise successful. The duration of the investigative stop was not at issue because the driver of the vehicle consented to the police searching it. Trial counsel's failure to raise that issue was a strategic consideration. "[N]o Fourth Amendment violation occurs when an individual voluntarily consents to a search." *State v. Davis*, 2016-Ohio-3539, 67 N.E.3d 33, ¶ 32 (4th Dist.). There is also nothing in this record to indicate that the duration of the investigative stop was longer than necessary. Appellant similarly fails to articulate any basis for finding that the stop was prolonged and that a motion to suppress on the issue would have been successful if raised.

{¶14} Counsel raising Appellant's removal and seizure from the vehicle also would not have been successful because "[o]fficers can order a driver and a passenger to exit the vehicle, even absent any additional suspicion of a criminal violation". *State v. Alexander-Lindsey*, 2016-Ohio-3033, 65 N.E.3d 129, ¶ 14 (4th Dist.); *See also State v. Wojtaszek,* 11th Dist No. 2002–L–016, 2003–Ohio–2105, ¶ 17.

{¶15} Counsel raising the K9 and his handler's training would not have been successful. There is nothing in the record to support Appellant's notion that the K9 and

his handler's training were lacking. "Counsel is not deficient for failing to raise a meritless issue." *State v. Massey*, 10th Dist. No. 12AP–649, 2013–Ohio–1521, ¶ 13.

**{¶16}** Appellant next asserts that his trial counsel was ineffective because he should have "raised the issue to the Court of potential evidence missing from discovery." Appellant specifically contends that trial counsel should have moved to suppress evidence because Detective Butler testified that he relayed the details for the investigative stop to Officer Friel on a private police radio instead of the main police radio. Appellant argues that because the court did not have the recording, it did not know what information Detective Butler relayed to Officer Friel. Counsel raising this issue would not have been successful because Detective Butler testified to the information he relayed to Officer Friel and Appellant does not provide us with any reason why we should not find this testimony credible.

**{¶17}** Appellant last asserts that his trial counsel was ineffective because he failed to seek a continuance to prepare for trial after having been appointed.

**{¶18}** The court first appointed a public defender to represent Appellant, but the attorney withdrew representation because of a conflict with a potential witness. On March 8, 2022, the court appointed new counsel. The newly appointed trial counsel filed a motion to continue the March 14, 2022 trial to March 23, 2022. The court granted the motion.

**{¶19}** Appellant now asserts that his trial counsel was ineffective because he should have requested more than nine additional days to prepare for trial. Appellant does not articulate any reason why trial counsel needed more time. There is also nothing in this record showing that trial counsel was unprepared. Appellant fails to demonstrate that

7

the trial's outcome would have been different if trial counsel had moved for a longer continuance.

{¶20} Appellant's first assignment of error is without merit.

{¶21} Second assignment of error: "The trial court committed prejudicial error in denying Defendant-Appellant's Motion to Suppress by finding that the facts do not support a conclusion that the Defendant-Appellant's Fourth Amendment rights were violated."

{¶22} "'Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. At a hearing on a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses. *Id.*; *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). An appellate court reviews the trial court's application of the law to its factual findings de novo. *State v. Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶ 100. Accepting the facts as true, the reviewing court then must independently determine, without deference to the trial court, whether the trial court properly applied the substantive law to the facts of the case. *Burnside,* citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist.1997).

{¶23} Appellant raises multiple issues under this assignment of error. On his motion to suppress, Appellant only challenged whether or not the officers had reasonable suspicion to stop the vehicle. A failure to raise an issue on a motion to suppress constitutes a complete waiver, and an appellant is barred from raising that issue on appeal. *State v. Mock*, 11th Dist. No. 2012–L–066, 2013-Ohio-874, 2013 WL 950812, ¶

8

Case No. 2022-L-044

9-10. Thus, we only will consider whether the court erred in denying the motion to suppress on the issue of reasonable suspicion to stop the vehicle.

{¶24} "A stop is constitutional if it is supported by either a reasonable suspicion or probable cause." *State v. McGary*, 11th Dist. Trumbull No. 2006-T-0127, 2007-Ohio-4766, ¶ 22, quoting *State v. Molek*, 11th Dist. Portage No. 2001-P-0147, 2002-Ohio-7159, ¶ 25. To justify an investigative stop, an officer "must be able to point to specific and articulable facts which would warrant a [person] of reasonable caution" believing that the action taken was appropriate. *Id.*, citing *Molek*, at ¶ 25, citing *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991), citing *Terry v. Ohio*, 392 U.S. 1, 19-20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The "police officer must be able to cite articulable facts that give rise to a reasonable suspicion that the individual is currently engaged in or is about to engage in criminal activity." *State v. James*, 11th Dist. Portage 2009-P-0082, 2010-Ohio-4556, 2010 WL 3733842, ¶ 16, quoting *State v. Gray*, 11th Dist. Geauga No. 99-G-2249, 2000 WL 973411, *2 (July 14, 2000), citing *Terry, supra,* at 6.

{¶25} Whether or not an officer had a reasonable suspicion to justify an investigative stop "'must be viewed in light of the totality of the surrounding circumstances.'" *State v. McDonald*, 11th Dist. Trumbull No. 91-T-4640, 1993 WL 334223, *4, quoting *State v. Bobo*, 37 Ohio St.3d 177, 524 N.E.2d 489 (1988), paragraph one of the syllabus. It is not possible to precisely define the reasonable suspicion necessary to initiate a stop and the standard cannot be "reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *Maumee v. Weisner*, 87 Ohio St.3d 295, 299, 720 N.E.2d 507 (1999). Reasonable suspicion is less than probable cause but "something more than an 'inchoate and

9

unparticularized suspicion or "hunch.'" *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), quoting *Terry*, *supra*, at 27.

{¶26} At the suppression hearing, Detective Butler testified that: he saw Appellant drive to the gas station parking lot (a high crime area) without going inside or using a gas pump; Appellant waited there for twenty minutes and then entered another vehicle; both vehicles had suspicious license plates that did not belong to either individual; the vehicle almost caused an accident and then it changed lanes without signaling; the vehicle took an indirect route from its original location to another parking lot where it remained for three minutes before returning to the gas station. The totality of the circumstances demonstrate that Detective Butler had articulable facts that gave rise to his reasonable suspicion that Appellant and the driver were currently engaged in, or were about to engage in, criminal activity. The court did not err in denying Appellant's motion to suppress.

{¶27} Appellant's second assignment of error is without merit.

{¶28} The judgment of the Lake County Court of Common Pleas is affirmed.

MARY JANE TRAPP, J.,

MATT LYNCH, J.,

concur.

10

Case No. 2022-L-044