[Cite as *State v. McNeal*, 2025-Ohio-3304.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                            Court of Appeals No. L-24-1184

    Appellee                                            Trial Court No. CR0202302448

v.

Dean Michael McNeal                              **DECISION AND JUDGMENT**

    Appellant                                           Decided:  September 12, 2025

* * * * *

Julia R. Bates, Esq., Lucas County Prosecuting Attorney,
and Randy L. Meyer, Esq., Assistant Prosecuting Attorney, for appellee.

Laurel A. Kendall, Esq., for appellant.

* * * * *

**ZMUDA, J.**

## I. Introduction

{¶ 1} Appellant, Dean Michael McNeal, appeals from his July 17, 2024 conviction

on one count of aggravated possession of drugs.  Appellant argues that the trial court

erred when it denied his pretrial motion to suppress prior to his conviction.  For the

following reasons, we affirm the trial court's denial of appellant's motion and affirm his conviction.

## A. Facts and Procedural Background

{¶ 2} On September 19, 2023, appellant was indicted on one count of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(2) and (C)(1)(d), a second-degree felony; and one count of aggravated possession of drugs in violation of R.C. 2925.11(A) and (C)(1)(c), a second-degree felony. The charges arose from an incident that occurred on April 6, 2023, when a police officer observed appellant and two other individuals approaching a vehicle on foot in a "high crime area" of the city of Toledo in Lucas County, Ohio. The officer then observed appellant, while at the vehicle, pull an item from his waistband and exchange it with the driver of the vehicle. Another officer then stopped appellant and, upon performing a search, discovered small glass jars containing methamphetamine.

{¶ 3} Appellant appeared for his arraignment on December 13, 2023. At that time, he was determined to be indigent and was appointed counsel. He then entered a not guilty plea to both charges.

{¶ 4} On March 5, 2024, appellant filed a motion to suppress all evidence seized during the officer's search. Appellant argued that the officers observing his conduct had no reasonable, articulable suspicion that he had engaged in criminal conduct and, therefore, the search was unreasonable and violated his 4th Amendment right to be free

2.

from unreasonable searches.[1]  The trial court held a hearing on appellant's motion on April 18, 2024.  The state called a single witness, Detective Matthew Sulick, whose testimony is summarized below:[2]

{¶ 5} At the time of the hearing, Detective Sulick had been employed with the Toledo Police Department in Toledo, Ohio, for approximately 12 years.  On April 23, 2023, the date appellant was searched by Toledo Police officers, Detective Sulick was assigned to the department's gang task force.  In that role, his task was to "investigate, identify, apprehend, [and] prosecute individuals involved in criminal activity."  The task force accomplishes these goals through "traffic stops, suspect stops, going to hot calls for service, responding to shots fired, [and] incidents of that nature."

{¶ 6} On the date appellant was searched, Detective Sulick and his assigned partner were on "routine patrol."  While driving by an apartment complex, they observed three males approach a silver vehicle.  Detective Sulick noted that one of the individuals, ultimately determined to be appellant, was wearing a distinctive backpack with a shark graphic on it.  Detective Sulick observed appellant approach the driver's side of the vehicle.  While at the driver's door, appellant removed an item from his "waist area" and conducted a "hand-to-hand" exchange with the driver.  Appellant and the other

---

[1] Appellant's motion also alleged that the officers conducting the search elicited incriminating statements from him prior to advising him of his rights pursuant to *Miranda v. Arizona,* 384 U.S. 436 (1966).  Appellant does not appeal the trial court's denial of the motion to suppress those statements.

[2] Testimony unrelated to the issue on appeal has been omitted.

3.

individuals with him then walked away from the vehicle, traveling eastbound. Detective Sulick could not identify the object appellant gave the driver, but testified that his training and experience showed that hand-to-hand transactions indicated drug-related activity. He estimated that approximately 50% of his investigations into drug activity involved hand-to-hand transactions. He also noted that the transaction occurred in a high crime area of the city.

{¶ 7} After appellant walked away from the transaction, Detective Sulick and his partner pulled into a parking lot ahead of him in his direction of travel. Upon seeing the patrol vehicle, appellant and the other individuals immediately turned northbound toward the apartment complex, an evasive maneuver Detective Sulick believed was to avoid an encounter with him. As appellant continued in the opposite direction, Detective Sulick provided a description of the individuals over the radio seeking other task force members' assistance in stopping them. Another officer, Sergeant Krabill, "made contact" with the individuals a short time later.

{¶ 8} Detective Sulick testified that when he joined Sergeant Krabill, he observed a strong odor of both raw and burnt marijuana. He then conducted a "pat down and search" of appellant and discovered a pouch in his waistband. The pouch contained a glass jar with several "colorful pills" as well as marijuana. The officers seized the pills and marijuana, provided appellant a property receipt, and then released him.

{¶ 9} After describing the search, Detective Sulick then provided a detailed description of the location at which he first observed appellant through aerial views and

4.

maps the state introduced into evidence. He described the area in which the search occurred as a "high crime, high drug area." He testified that prior to becoming a detective, he served on patrol in that area and would respond to "at least * * * one to two incidents during an eight-hour shift." He stated it was common for these incidents to involve drug-related activity.

{¶ 10} Detective Sulick then testified that after completing the search, he returned to the department's "Safety Building" and performed a field test on the pills seized from appellant. The field test revealed that the pills contained methamphetamine and they were submitted to the department's lab for testing. The lab's chemical analysis confirmed the field test results and appellant was indicted on the possession and trafficking offenses.

{¶ 11} On cross-examination, Detective Sulick testified that the hand-to-hand transaction he observed appellant conduct lasted approximately 5 to 10 seconds. He noted that during the transaction, appellant reached into a pouch in his "waistband area." He conceded that he did not see what item was passed between appellant and the driver, but that the nature of the transaction and the area in which it occurred is what raised his suspicion that appellant was selling drugs.

{¶ 12} At the conclusion of Detective Sulick's testimony, the parties offered brief arguments regarding whether Detective Sulick had articulable, reasonable suspicion that appellant had engaged in criminal activity. The trial court determined that he did have reasonable, articulable suspicion of criminal activity and denied appellant's motion to

5.

suppress at the conclusion of the hearing. The trial court filed a written order denying the motion shortly after the hearing.

{¶ 13} On May 21, 2024, appellant appeared for a change of plea hearing before the trial court. At that time, pursuant to an agreement with the state, appellant entered a no-contest plea to the aggravated possession charge. In exchange, the state moved to dismiss the aggravated trafficking in drugs charge. The trial court accepted the plea agreement, dismissed the trafficking offense, and on July 17, 2024, sentenced appellant to an indefinite prison term of a minimum of four years and a maximum of six years. The trial court memorialized appellant's sentence in a judgment entry later that day.

## B. Assignments of Error

{¶ 14} Appellant timely appealed the trial court's judgment and alleged the following error for our review:

> The trial court abused its discretion when it denied appellant's motion to suppress evidence obtained from an arguably illegal *Terry* stop.

## II. Law and Analysis

{¶ 15} In his single assignment of error, appellant argues that the trial court erred in denying his motion to suppress. Specifically, he argues that he was the subject of an illegal *Terry* search in violation of the 4th Amendment of the United States Constitution and that the evidence discovered during that search should have been suppressed.

{¶ 16} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Colby,* 2021-Ohio-4405, ¶ 14 (6th Dist.), citing *State v.*

6.

*Burnside,* 2003-Ohio-5372, ¶ 8.  "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses."  *Burnside* at ¶ 8, citing *State v. Mills,* 62 Ohio St.3d 357, 366 (1992).  "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent credible evidence".  *Id.* at ¶ 8.  "Accepting these facts as true, the appellate court must then independently, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard."  *Id.*

{¶ 17} The legal question at issue here is whether Detective Sulick satisfied the standard necessary to search appellant through a *Terry* stop.  A *Terry* stop, so named because of *Terry v. Ohio,* 88 S.Ct. 1868 (1968), is an investigatory detention that can only be initiated when an officer has reasonable suspicion that an individual was engaged in criminal activity. *State v. Mckenzie*, 2025-Ohio-150, ¶ 24 (5th Dist.).  "Reasonable suspicion entails some minimal level of objective justification for making a stop—that is, something more than an inchoate and unparticularized suspicion or hunch but less than the required level of suspicion required for probable cause."  *State v. Purley,* 2019-Ohio-3931, ¶ 25 (6th Dist.), citing *State v. Jones,* 70 Ohio App.3d 554, 556-557 (2d Dist.1990).  For a *Terry* stop to be valid, "an officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrants that intrusion."  *State v. Daniels,* 2013-Ohio-1081, ¶ 10 (6th Dist.)  The actions of the officer to determine whether a *Terry* stop is valid is viewed through "the eyes of a

7.

reasonable and cautious police officer on the scene, guided by his experience and training." *State v. Bobo*, 37 Ohio St.3d 177, 179 (1988), citing *United States v. Hall*, 525 F.2d 857, 859 (D.C.Cir. 1976).

{¶ 18} We begin our analysis by reviewing the facts in the record. *Burnside* at ¶ 8. We find that the facts are undisputed. Detective Sulick testified that he observed appellant conduct a hand-to-hand transaction with an individual in a vehicle in a high crime area of the city. He then observed appellant, when leaving the transaction, turn and travel in the opposite direction of his patrol vehicle. When officers detained appellant, their search revealed glass jars containing methamphetamine. Appellant does not challenge this testimony or the results of the search. He merely argues that these facts are insufficient to permit the *Terry* stop that resulted in the discovery of the methamphetamine. Because the facts are undisputed, our analysis is limited to whether those facts satisfy the applicable legal standard to determine whether the stop was valid, that is, whether these facts show that Detective Sulick had reasonable, articulable suspicion that appellant was engaged in criminal activity to warrant the *Terry* stop that resulted in the discovery of the methamphetamine. *Id.*

{¶ 19} As described above, Detective Sulick identified several undisputed facts—a hand-to-hand transaction in a high crime area coupled with appellant's attempt to evade interaction with police officers—that formed the basis of his suspicion that appellant was engaged in criminal activity. Each of these facts are relevant to determining whether Detective Sulick had sufficient reasonable suspicion to conduct a *Terry* stop of appellant.

8.

*See State v. Manning,* 2009-Ohio-2605, ¶ 14-16 (6th Dist.) (holding that an officer's observation of hand-to-hand transactions in an area with a history of drug complaints was sufficient to show reasonable suspicion of criminal activity); *State v, Williams,* 2018-Ohio-5202, ¶ 45 (6th Dist.), citing *State v. Bobo,* 37 Ohio St.3d 177 (1988) ("Ohio courts recognize that the reputation of an area for criminal activity is an articulable fact upon which a police officer may legitimately rely in determining whether an investigative stop is warranted."); *State v. Knicely,* 2014-Ohio-3437, ¶ 10 (6th Dist.) ("Unusual conduct, *including evasive behavior,* which is observed by a police officer provides a reasonable basis for the officer to suspect, in light of the officer's experience, that criminal activity may be afoot and that a [*Terry*] stop is warranted.") (Emphasis added). Viewing these facts through "the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training," we find that Detective Sulick had reasonable suspicion that appellant was engaged in criminal activity. *Bobo* at 179. As a result, the legal standard for initiating a *Terry* stop was satisfied and the trial court did not err in denying his motion to suppress. *Burnside* at ¶ 8.

{¶ 20} In his brief, appellant argues that because Detective Sulick could not identify what was exchanged during the hand-to-hand transaction, that his search was "a fishing expedition by the detective, because appellant was in a high crime area." Essentially, appellant argues that because Detective Sulick did not actually see drugs being exchanged, that the only reason he stopped appellant was because he was in a high crime area, a fact that on its own is insufficient to warrant a *Terry* stop.

9.

{¶ 21} Appellant is correct that an individual's presence in a high crime area, without any indicators of criminal activity, is insufficient to warrant a *Terry* stop. *State v. Mosby,* 2021-Ohio-2255 (6th Dist.). However, the fact that the suspicious conduct an officer observed occurred *in* a high crime area is one of many factors that can be considered to support an officer's reasonable suspicion that an individual is engaged in criminal activity. *Williams* at ¶ 45; *See also State v. Partin,* 2023-Ohio-4056 (2d Dist.); *State v. Wilson,* 2023-Ohio-409 (11th Dist.). Appellant's argument that Detective Sulick initiated the *Terry* stop simply because he was in a high crime area is unfounded as it ignores that Detective Sulick also observed him engage in other suspicious conduct *in* that high crime area—namely, his participation in a hand-to-hand transaction and his attempt to evade interaction with Detective Sulick. Put simply, appellant's argument that he was only stopped because he was present in a high crime area is not supported by the record.

{¶ 22} Moreover, appellant's argument that the stop was invalid because Detective Sulick could not identify what appellant exchanged with the driver, if adopted by this court, would improperly add an extra requirement to the standard an officer must satisfy to conduct a *Terry* stop. There is no requirement that an officer identify specific evidence that a crime had been committed prior to initiating a *Terry* stop. The only requirement is that an officer identify specific and articulable facts showing that they have *reasonable suspicion* that criminal activity occurred. *Daniels,* 2013-Ohio-1081 at ¶ 10 (6th Dist.). Had Detective Sulick known that appellant exchanged drugs with the individual, he

10.

would not have needed to conduct a *Terry* stop for further investigation and could have simply arrested appellant. Based on appellant's assignment of error in this appeal, the only issue before this court is whether Detective Sulick had reasonable suspicion that appellant committed a crime. His acknowledgement that he could not identify the item appellant exchanged with the driver is irrelevant to that analysis.

{¶ 23} In sum, the record shows that Detective Sulick had reasonable suspicion that appellant had engaged in criminal activity. As a result, he satisfied the legal standard necessary to conduct an investigatory *Terry* stop and the trial court did not err in denying appellant's motion to suppress. For these reasons, we find appellant's single assignment of error not well-taken.

### III. Conclusion

{¶ 24} We find appellant's single assignment of error not-well taken. As a result, we affirm the trial court's April 18, 2024 denial of appellant's motions to suppress and his July 17, 2024 conviction.

{¶ 25} Appellant is ordered to pay the costs of this appeal pursuant to App.R.24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.

_____
JUDGE

Gene A. Zmuda, J.

_____
JUDGE

Myron C. Duhart, J.
CONCUR

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.